IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **BISCOTTI INC.,** | |
|               **Plaintiff,** | Civil Action No. 2:13-cv-01015-JRG |
| **v.** | |
| **MICROSOFT CORP.,** | |
|               **Defendant.** | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This is a case for patent infringement brought by Plaintiff Biscotti Inc. ("Biscotti") against Defendant Microsoft Corp. ("Microsoft"). On June 5, 2017, a jury trial commenced, and the jury returned a unanimous verdict finding no infringement and also finding that the claims in suit were invalid. (Dkt. No. 276.) After the close of evidence, and while the jury was deliberating, the Court provided the parties an opportunity to present evidence and argument in support of and in opposition to, as appropriate, any equitable defenses urged by Microsoft. At said bench trial, Microsoft presented evidence in support of its inequitable conduct defense, which the Court then took under advisement.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court issues these Findings of Fact and Conclusions of Law.

**I.     Findings of Fact**

**[FF1]**     Biscotti accused Microsoft of infringing U.S. Patent No. 8,144,182 (the "'182 Patent"). (Dkt No. 1.) The '182 Patent is titled "Real Time video Communications System" and it is directed toward systems and methods for video calling using video communication devices. (PTX-1.)

**[FF2]**     The '182 Patent lists Drs. Matthew Shoemake and Nadeem Ahmed as named inventors.  (*Id.*)

A.     **The Inventors' Knowledge of the LifeSize Express System**

**[FF3]**     On or around February 2008, Dr. Matthew Shoemake learned of the existence of a company called LifeSize Communications from an investment firm named Austin Ventures. (Dkt. No. 294, 6/9/17 Trial Tr. at 110:23–112:3.)

**[FF4]**     Between 2008 and the issuance of the '182 Patent in March 2012, Dr. Shoemake learned general information about LifeSize Communications and its LifeSize Express product.  (PTX-1; Dkt. No. 286, 6/9/17 P.M. Trial Tr. at 132:25–133:8, 191:11–194:14, 196:25–199-25, 220:20–221:11, 223:10–224:5.)  For example, Dr. Shoemake understood that LifeSize Express was "corporate and business focused," offered "HD calls over the Internet," and was "HDTV connected."  (*Id.* at 116:6-25.)   In contrast, Biscotti (led by Dr. Shoemake) primarily focused on consumers.  (*See, e.g., id.* at 95:8–97:14.)

**[FF5]**     During this same period, Dr. Shoemake did not seek out or otherwise gather specific, technical information about LifeSize Communications or its products.  (Dkt. No. 291, 6/9/17 Trial Tr. at 125:22–126:1, 130:25–131:16; Dkt. No. 286, 6/5/17 PM Trial Tr. at 196:25–197:2, 198:25–199:2.)  For example, Microsoft did not establish that Dr. Matthew Shoemake had knowledge of LifeSize Express data sheets (*i.e.*, DX-15) before or during the pendency of the application that issued as the '182 Patent.  (Dkt. No. 58 at 6; Dkt. No. 291, 6/9/17 Trial Tr. at 99:7–134:19.)

**[FF6]**     Based on the information Dr. Shoemake learned about LifeSize Communications and its LifeSize Express product, he testified that he believed the LifeSize Express targeted a different market (as compared to Biscotti) and that he believed the LifeSize

Express product lacked some of Biscotti's products' functionality (i.e. HDTV "pass-through" functionality). (Dkt. No. 286, 6/5/17 PM Trial Tr. at 134:8–16, 220:20–222:13, 223:15–224:5; Dkt. No. 286, 6/9/17 P.M. Trial Tr. at 120:4–120:7, 125:22–126:1, 129:7–130:19.)

**[FF7]** Microsoft presented no evidence that Dr. Ahmed knew of the LifeSize Express system or technical details of the system. (Dkt. No. 291, 6/7/17 P.M. Trial Tr. at 29:25–39:2 (calling Dr. Ahmed by deposition designation).)

### B. Prosecution of the '182 Patent

**[FF8]** Drs. Shoemake and Ahmed were involved in drafting the '182 Patent. (Dkt. No. 294, 6/9/17 Trial Tr. at 99:24–101:7.)

**[FF9]** Dr. Shoemake understood that he had a duty to disclose relevant prior art to the attorney prosecuting his patent and ultimately to the Patent and Trademark Office ("PTO"). (*Id.* at 104:23–105:4, 105:13–106:1.)

**[FF10]** There is no evidence that Dr. Shoemake disclosed the LifeSize Express or any other reference to his prosecuting attorney or the PTO. For example, the '182 Patent lists only two references cited and both were cited by the examiner rather than the applicant. (PTX-1.)

**[FF11]** However, Microsoft has not shown that the applicants of the '182 Patent or their prosecution counsel knew that the LifeSize Express system or the LifeSize Express data sheet was but-for material to the patentability of the claims of the '182 Patent.

**[FF12]** Microsoft has also not shown that that the applicants of the '182 Patent or their prosecution counsel made a deliberate decision to withhold references, including the LifeSize Express, from the PTO with the specific intent to deceive the PTO.

## II.  Conclusions of Law

**[CL1]**  A finding of inequitable conduct results from a patent applicant breaching the duty to prosecute a patent application in good faith and with candor.  *See* 37 C.F.R. § 1.56.  *See also Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287–92 (Fed. Cir. 2011).

**[CL2]**  "To prove inequitable conduct, the accused infringer must provide evidence that the applicant (1) misrepresented or omitted material information, and (2) did so with specific intent to deceive the PTO." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1334 (Fed. Cir. 2011) (citing *Therasense*, 649 F.3d at 1287).

**[CL3]**  Both of these elements must be established by clear and convincing evidence. *Therasense*, 649 F.3d at 1287.  *See also Price v. Symsek*, 988 F.2d 1187, 1191 (Fed. Cir. 1993) (clear and convincing evidence "produces in the mind of the trier of fact an abiding conviction that the truth of a factual contention is highly probable" (internal quotation marks omitted)).

### A.  Materiality

**[CL4]**  Since the Court finds that Microsoft has not established that the applicants of the '182 Patent or their prosecution counsel made a deliberate decision to withhold references from the PTO with the specific intent to deceive the PTO, [FF11–FF12], the Court need not and does not address the materiality prong. *Therasense*, 649 F.3d at 1290 ("[A] court must weigh the evidence of intent to deceive independent of its analysis of materiality.")

### B.  Intent to Deceive

**[CL5]**  The failure to disclose an otherwise material prior art reference may serve as the basis for a defense of inequitable conduct if "the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense*, 649 F.3d at 1290. "However, to meet the clear and convincing evidence standard, the specific intent to deceive

-5-

must be the single most reasonable inference able to be drawn from the evidence." *Id.* (internal quotation marks omitted).

**[CL6]** Microsoft has not proven that "the single most reasonable inference" to be drawn from the evidence is that Dr. Shoemake deliberately withheld the LifeSize Express system understanding that the system itself, as well as technical documents describing the system, were prior art. [FF3–13].

**[CL7]** In fact, it is at least equally reasonable that Dr. Shoemake, who served as the basis for Microsoft's inequitable conduct defense, believed that LifeSize Express, based on his general understanding of the product, was materially different than the technology described in the '182 Patent. [FF3–FF6].

**[CL8]** It is also reasonable to conclude that the LifeSize Express reference was excluded based on this understanding, accurate or not, and not based on a "deliberate decision to withhold." [FF6–FF12].

**[CL9]** Accordingly, Microsoft has not carried its burden with respect to the second element of inequitable conduct.

### C. <u>Conclusion</u>

**[CL10]** For the reasons set forth above, the Court concludes that Microsoft has not established that Drs. Shoemake and Ahmed committed inequitable conduct with respect to the LifeSize Express system and/or the LifeSize Express datasheet in filing the '182 Patent. Accordingly, Microsoft's defense of equitable estoppel is therefore **DENIED** and **DISMISSED**.

-6-

**So ORDERED and SIGNED this 3rd day of October, 2017.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE